UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EARL PALMER,<br><br>                Plaintiff,<br><br>v.<br><br>THE UNITED STATES DEPARTMENT OF INTERIOR; DEBRA ANN HAALAND, in her official capacity as Secretary of Interior; OFFICE OF AVIATION SERVICES; SUSAN BATES, in her official capacity as Director of the Office of Aviation Services and WALKER CRAIG, in his official capacity as Office of Aviation Services Chief of Technical Services,<br><br>                Defendants. | Case No. 1:23-cv-00466-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is the Defendants' motion for summary judgment. (Dkt. 20.) The parties have briefed the pending motion and it is ripe for the Court's consideration.[1] The Court has determined that the matters before it are suitable for disposition without a

---

[1] The undersigned Magistrate Judge has jurisdiction to preside over this matter by virtue of all parties' express written consent. 28 U.S.C. § 636(c)(1); D. Idaho L. Civil R. 72.1(a)(1) (authorization to decide civil cases with the parties' consent).

**MEMORANDUM DECISION AND ORDER - 1**

hearing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(ii). After careful consideration, and for the reasons discussed below, the Court will grant Defendants' motion in part.

## FACTS[2]

Plaintiff Earl Palmer was previously a pilot for the U.S. Department of Interior ("DOI"). (Dkt. 1, ¶ 5.) In 2012, Palmer was involved in an incident with the potential for loss of life[3] while flying a helicopter for the DOI, which caused approximately $120,000.00 in damage to the helicopter. Wucetich Decl., Ex. A. (Dkt. 20-4 at 11 – 13.) Palmer was advised that "any future evidence of excessive risk taking or poor decision making…may be grounds for administrative action, including permanent revocation of pilot privileges within the Department." Supp. Craig Decl. Ex. A. (Dkt. 22-2.)

In 2016, Palmer was involved in an aircraft mishap involving a fixed wing plane. Craig Decl., ¶ 2 & Exs. A & B. (Dkt. 20-6, 20-7, 20-8.)

As a result of the 2016 aircraft mishap, the Office of Aviation Services ("OAS") convened a Pilot Review Board ("PRB") to investigate Palmer's involvement, as he was the pilot-in-command at the time of the incident. A PRB is an administrative, fact-finding proceeding, convened to assist the OAS Director in examining information relevant to the continued qualification, disqualification or reinstatement of any DOI pilot. (Dkt. 20-8 at 5.) The PRB was convened in accordance with DOI aviation policy, and Operational

---

[2] Consistent with the standard on summary judgment, the factual background is written to reflect that all evidence in the record is construed in a light most favorable to the non-moving party, who is also given the benefit of all reasonable inferences which can be drawn from that evidence. However, Palmer's declaration merely states that the "factual assertions set forth in the response brief are all true and accurately reflect the events that transpired which give rise to this proceeding," without directly disputing the salient facts set forth by Defendants. (Dkt. 20, 21, 21-1.)

[3] In addition to Palmer, two other people were on board the helicopter.

**MEMORANDUM DECISION AND ORDER - 2**

Procedures Memorandum 24 (OPM 24). (Dkt. 20-10.)[4] The PRB was comprised of two DOI pilots and one air safety investigator. Craig Decl., ¶ 3. (Dkt. 20-6.)[5]

As part of the PRB's investigation, it reviewed investigative reports, and conducted independent interviews with Palmer and fourteen other key personnel involved in, or associated with, the events in 2012 and 2016. (Dkt. 20-8 at 6.)

During the PRB's investigation, Palmer was offered union assistance. Supp. Craig Decl., ¶ 3. (Dkt. 22-3.) Palmer formally declined the offer for union assistance via email on September 13, 2016. Supp. Craig Decl., ¶ 3 & Ex. B. (Dkt. 22-3.) In that same email, Palmer expressed his dismay at "the direction the proceedings are going," but stated he believed "OAS senior management is following the letter of the law." *Id.*

On January 27, 2017, Palmer changed his mind, and formally requested via email that he have union representation. He requested that a specific union representative, Jeff McVey, accompany him during the PRB's investigation. Supp. Craig Decl. ¶ 4 & Ex. C. (Dkt. 22-4.)

Following deliberations, on July 17, 2017, the PRB issued a unanimous recommendation in a 481-page report that Palmer's pilot authorization[6] to fly for the DOI be permanently revoked and that he be disqualified from future service as a DOI pilot. Craig Decl., ¶ 3 & Ex. B. (Dkt. 20-6, 20-7, 20-8.)

---

[4] The current version of OPM-24, effective January 1, 2023, and last updated on November 10, 2022, is in the record at Dkt. 1, page 12. The 2023 version of OPM-24 made no changes to the prior version.
[5] The three board members were: Mr. John M. Amicarella, Regional Aviation Manager/Pilot, Bureau of Indian Affairs; Mr. James Castillo, Aviation Safety Compliance Inspector (Inspector Pilot), OAS; and Mr. Stephen Rauch, Aviation Safety Manager, Bureau of Safety and Environmental Enforcement. (Dkt. 20-8 at 49.)
[6] A pilot authorization is colloquially referred to as a "pilot card." (Dkt. 20-11 at 2.)

**MEMORANDUM DECISION AND ORDER - 3**

The PRB's recommendation was adopted on August 17, 2017, by the Associate Director of the OAS, Mark Bathrick. Craig Decl., ¶ 3 & Ex. A. (Dkt. 20-6, 20-7.)

The decision memo informed Palmer that he could submit a request to Mark Bathrick for formal reconsideration of the decision, together with any supporting facts or new information, within 30 days of August 17, 2017. Craig Decl., ¶ 4 & Ex. A. (Dkt. 20-6, 20-7.)

Palmer sent a memo to OAS management on September 15, 2017, which expressly stated that he was "not requesting formal reconsideration of [the] decision to permanently revoke [his] DOI pilot authorization." Craig Decl., ¶ 4 & Ex. C. (Dkt. 20-6, 20-9.)

After the decision was finalized to permanently revoke Palmer's pilot authorization, Palmer entered into an employment agreement on January 12, 2018, with the OAS which allowed him to become a part-time employee, in a non-pilot status, until March 31, 2018, at which time he agreed to resign. Craig Decl., ¶ 5 & Ex. D. (Dkt. 20-6, 20-10.)

On January 12, 2018, Palmer sent an email to OAS management titled "Resignation and Apology." Craig Decl., ¶ 6 & Ex. E. (Dkt. 20-11.)

On January 21, 2022, Palmer sent an email to OAS management[7] in which he stated, "[y]our predecessor made it very clear that my permanent revocation was 'forever'. I am requesting reconsideration." Craig Decl., ¶ 7 & Ex. F. (Dkt. 20-12.)

---

[7] The email was directed to Frank Crump, and copied to Gene Bannister, Walker Craig, Kevin Fox, and Terry Pena.

**MEMORANDUM DECISION AND ORDER - 4**

Palmer indicated he planned to apply for reinstatement[8] "through the proper channels in Alaska and/or West Region." *Id.*

On June 26, 2023, Palmer submitted an application to the DOI to become a carded pilot. Compl. ¶ 7; Ans. ¶ 7. (Dkt. 1, 5.)[9]

On June 29, 2023, Walker Craig, Chief Technical Services for the DOI, Office of Aviation Services, informed Palmer that, based upon the August 17, 2017 decision to permanently revoke his DOI pilot privileges, and in light of Palmer's failure to request reconsideration of the decision, Palmer's pilot evaluation request for the 2023 season was being returned without action. Craig Decl., Ex. G. (Dkt. 20-13.) Craig's email further stated, "[a]s you are permanently disqualified from serving as a DOI pilot, future requests will not be considered." *Id.*

The current Director of the OAS, Susan Bates, recently reviewed the PRB report[10] and the decision memorandum issued by Associate Director Mark Bathrick. She states in her declaration that she agrees with the decision. Bates Decl. ¶ 2. (Dkt. 20-5.)

Palmer currently works for Berry Aviation and Bighorn Airways as a pilot. Palmer Dep. (Dkt. 20-4 at 8.) To serve as a vendor to the DOI, Bighorn Aviation must be certified by the FAA, and any pilots providing such services must meet certain qualifications and pass a "check ride to be carded." Compl. ¶ 6; Ans. ¶ 6. (Dkt. 1, 5.)

---

[8] Palmer indicated he would be requesting reconsideration via submission of Form OAS-64A, which form is titled, "Interagency Airplane Pilot Evaluation Application." Department of the Interior Interagency Airplane Pilot Evaluation Application, Form OAS-64A, available at: https://www.doi.gov/sites/default/files/uploads/oas-64a.pdf.

[9] Palmer provided no documentation or other evidence verifying what was included in the request.

[10] From the statements made in the declaration, it appears Bates reviewed the PRB report following the initiation of this lawsuit.

**MEMORANDUM DECISION AND ORDER - 5**

On October 18, 2023, Palmer filed the Complaint against Defendants for refusing to consider Palmer's application to obtain a pilot card, and failing to timely act upon the application. (Dkt. 1.) Palmer seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2202, a Writ of Mandamus under 28 U.S.C. § 1361, and relief pursuant to Federal Rules of Civil Procedure 57 and 65. (Dkt. 1.) Palmer seeks a declaration that he is eligible to apply for pilot carding and reinstatement; an order compelling Defendants to timely consider Palmer's application for carding and/or reinstatement; a declaration that Defendants are not authorized by rule or statute to "permanently revoke" the privileges of a carded pilot without affording the pilot an opportunity to seek reinstatement; and, an order enjoining Defendants from interfering with Palmer's attempts to seek reinstatement. (Dkt. 1.)

Defendants filed a motion for summary judgment on August 22, 2024, on all claims asserted by Palmer in the complaint. (Dkt. 20.) Defendants contend that Palmer did not seek reconsideration within the 30-day time period following the 2017 revocation decision, and therefore failed to exhaust his administrative remedies.

In response, Palmer contends Defendants: (1) failed to follow DOI regulations when they convened the PRB; and, (2) denied him certain procedural due process protections to which he was entitled. Palmer asks the Court to set aside the 2017 revocation decision on the grounds that it was arbitrary and capricious, citing 5 U.S.C. § 706(2)(A). He argues also that Defendants failed to raise an exhaustion defense with regard to his 2023 pilot evaluation application, and thus his request for judicial review of that decision is properly before the Court. Palmer asks the Court to declare the 2017

**MEMORANDUM DECISION AND ORDER  - 6**

revocation decision void, to rule that the DOI and OAS rules and procedures violate the procedural due process rights of pilots, and to compel Defendants to act on Palmer's 2023 application.

In reply, Defendants contend that: (1) Palmer's challenge to the administrative process and the decision made in 2017 is time barred pursuant to the APA's six year statute of limitations; (2) it is improper for Palmer to request affirmative relief in his response when he failed to file a timely dispositive motion; (3) all defendants other than the Secretary of the DOI should be dismissed; and, (4) Palmer has no constitutional right to authorized pilot status.

## LEGAL STANDARDS

**1.      Summary Judgment**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The evidence and reasonable inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact and that summary judgment is proper as a matter of law. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets its burden, the burden shifts to the

nonmoving party to produce specific evidence of a genuine dispute of material fact supporting its claim or defense. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). To defeat a motion for summary judgment, the respondent cannot rely on an unsworn affidavit or the pleadings; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that preclude summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

At summary judgment, the Court does not make credibility determinations, weigh the evidence, or determine the truth of the matter. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017). Such determinations are reserved for the trier of fact. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). Rather, the Court's role is to determine whether there is a genuine issue for trial. *Zetwick*, 850 F.3d at 441.

**2.   Mandamus**

Mandamus is an extraordinary remedy "available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1997); 28 U.S.C. § 1361 ("the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.").

3. **The Administrative Procedure Act**

For statutes that do not provide a private right of action, Section 702 of the APA authorizes a suit by a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. A plaintiff may challenge either an agency's affirmative act under Section 704, or an agency's failure to act under Section 706.

Under Section 704, the "agency action" complained of must be "final agency action." 5 U.S.C. § 704. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61 (2004). To constitute "final agency action," two conditions must be met: (1) "the action must mark the consummation of the agency's decision making process—it must not be of a merely tentative or interlocutory nature"; and, (2) "the action must be one by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up). The Court may "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Section 706 of the APA requires courts to "compel agency action unlawfully withheld or unreasonably delayed…." 5 U.S.C. § 706(1). A claim under Section 706(1) can proceed "only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *S. Utah Wilderness All.*, 542 U.S. at 64. This limitation "rules out judicial direction of even discrete agency action that is not demanded by law (which includes, of course, agency regulations that have the force of law.)" *Id.* at 65.

**MEMORANDUM DECISION AND ORDER - 9**

The definition of "agency action" begins with a list of five categories of decisions made or outcomes implemented by an agency—"agency rule, order, license, sanction [or] relief." 5 U.S.C. § 551(13), *cited in S. Utah Wilderness All.*, 542 U.S. at 62. "All of those categories involve circumscribed, discrete agency actions, as their definitions make clear…." *S. Utah Wilderness All.*, 542 U.S. at 62. *See also Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871 (1990) (plaintiffs must challenge a discrete agency action that is harmful to them for their claim to be ripe.).

The applicable statute of limitations to challenge final agency action is six years. 28 U.S.C. § 2401(a); *Turtle Island Restoration Network v. U.S. Dep't of Com.*, 438 F.3d 937, 942–43 (9th Cir. 2006) ("Although the APA itself contains no specific statute of limitations, a general six-year civil action statute of limitation applies to challenges under the APA.").[11]

**4.      Declaratory Judgment Act**

28 U.S.C. § 2201 states that, "[i]n a case of actual controversy within its jurisdiction…any court of the United States…may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Under the Declaratory Judgment Act, Congress merely enlarged the

---

[11] The United States Supreme Court has "made plain that most time bars are nonjurisdictional." *United States v. Kwai Fun Wong*, 575 U.S. 402, 410 (2015). This is true "even when the time limit is important (most are) and even when it is framed in mandatory terms (again, most are)." *Id*. Thus, "Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional and so prohibit a court from tolling it." *Id*.; *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990) (creating rebuttable presumption that statutes of limitations on claims against the government are subject to equitable tolling).

**MEMORANDUM DECISION AND ORDER - 10**

range of remedies available in federal courts, but did not extend their jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). Therefore, the Declaratory Judgment Act cannot provide jurisdiction to a court that otherwise would lack independent statutory or diversity jurisdiction. *Lear Siegler, Inc. v. Adkins*, 330 F.2d 595, 599 (9th Cir. 1964) (holding that the Declaratory Judgment Act does not establish an independent basis for jurisdiction). Furthermore, "the existence of jurisdiction in an action for declaratory relief does not require that the court exercise it. It has judicial discretion to decline to grant such relief." *Lear Siegler, Inc.*, 330 F.2d at 599.

## DISCUSSION

Initially, several aspects of Palmer's complaint may be disposed of directly. Defendants in their reply assert that the only proper defendant in this case is the Secretary of the Department of Interior, and that Palmer has no Fourteenth or Fifteenth Amendment right to his authorized pilot status, citing *Dynamic Aviation v. Dep't of Interior*, 898 F. Supp. 11, 13 (D.D.C. 1995), *aff'd*, 132 F.3d 1481 (D.C. Cir. 1997). Reply at 4. (Dkt. 22.)

In *Dynamic Aviation*, a helicopter pilot brought an action against the DOI and other agency officials for wrongful denial of government contract work, citing a violation of his Fifth and Fourteenth Amendment rights to the United States Constitution. The pilot sought review of the agency's action under the APA. On summary judgment, the court held that only the Secretary of the Interior was the proper defendant; that the plaintiff had no Fourteenth Amendment rights against the United States Government; and that he did not have a Fifth Amendment protected property interest in a pilot card or in any future government contract. *Dynamic Aviation*, 898 F. Supp. at 13 (citing 5 U.S.C. § 702).

**MEMORANDUM DECISION AND ORDER - 11**

In accord with *Dynamic Aviation*, the Court will dismiss the Department of the Interior, the Office of Aviation Services, Susan Bates, and Walker Craig from this lawsuit.

**1.      Palmer's Claims Regarding the 2017 Decision Are Time Barred**

In his response brief, Palmer raises several challenges to the 2017 revocation decision. He asks the Court to set aside the revocation decision on the grounds that he was not afforded certain procedural due process protections to which he was entitled, and to rule that the decision was arbitrary and capricious pursuant to 5 U.S.C. § 706(2)(A).

The Court finds Defendants have carried their burden on summary judgment with regard to Palmer's challenge to the 2017 revocation decision. The Court finds Palmer failed to avail himself of the process for requesting reconsideration, which permitted him to submit new evidence within thirty days of receipt from the Carding Authority. (Dkt. 1 at 34.) *See, e.g., Kelly O. v. Taylor's Crossing Pub. Charter Sch.*, No. 4:12-CV-00193-CWD, 2013 WL 4505579, at *8 (D. Idaho Aug. 21, 2013) (finding that failure to exhaust at the agency level precludes the filing of a complaint).

Moreover, the Court finds such claims to be barred by the statute of limitations. Palmer's complaint in this lawsuit, which was filed on October 18, 2023, did not raise a challenge to the 2017 revocation decision. Palmer's due process and other challenges to the revocation decision were first raised in his response to Defendants' motion, which was filed on September 6, 2024. (Dkt. 21.) An APA claim accrues for purposes of Section 2401(a)'s six-year statute of limitations when the plaintiff is injured by final agency action. *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. ___,

MEMORANDUM DECISION AND ORDER - 12

144 S. Ct. 2440, 2460, 219 L. Ed. 2d 1139 (2024). Palmer was injured by the revocation decision on August 17, 2017. Thus, the Court finds Defendants have carried their burden on summary judgment. Palmer's claims concerning the challenged agency rules and the process that the DOI followed,[12] as well as to the revocation decision itself, are time barred.

## 2.     Palmer's Claims Concerning his 2023 Pilot Evaluation Application

While Palmer's claims concerning the procedure and process culminating in the 2017 revocation decision may be time barred, the Court finds his challenge to the DOI's failure to act on his June 26, 2023 pilot evaluation request for the 2023 season is not.

According to 48 C.F.R. § 9.402, agencies are required to solicit offers from, and award contracts to, "responsible contractors only." In the instant case, Palmer, through his employer, may only fly for the DOI if he possesses a pilot card.[13] "Debarment and suspension" from the ability to contract with the government is a serious sanction,

---

[12] Palmer contends that an appeal at the time the decision was rendered would have been futile, because the same person who adopted the findings would have heard the appeal. According to the procedure manual, a written request for reconsideration is to be directed to the NBC-AMD Associate Director, who may then consult with the pilot, the pilot's representatives, or agency managers, and issue a written decision. (Dkt. 1 at 34.) The NBC-AMD Associate Director also has the option to refer the request for reconsideration to a PRB. *Id.* Palmer has not shown that his injury could not have been redressed appropriately by the DOI's procedures. *See Kelly O.*, 2013 WL 4505579 at *9. Furthermore, the Court's independent research indicated that additional levels of review may have been available. *See, e.g., Muller v. Dep't of Interior*, No. SF-0752-13-0151-I-2, 2015 WL 630927 (M.S.P.B. Feb. 13, 2015) (review of findings by Pilot Review Board and administrative judge followed by independent Merit Systems Protection Board); *Penland v. Dep't of the Interior,* No. SF-0752-09-0736-I-1, 2010 WL 5494252 (M.S.P.B. Dec. 30, 2010) (petition for review of decision following Pilot Review Board's recommendation that pilot qualification card not be reinstated).

[13] It is not clear from the record whether Palmer's employer has requested or been awarded a contract to fly for the DOI, or if there are other carded pilots who could carry out the work. In *Dynamic Aviation,* the pilot requesting re-testing and re-issuance of his pilot card was the sole owner of a helicopter, which he used to perform government contract work prior to the suspension of his pilot and aviation cards. In that case, the plaintiff and the contracting entity were one and the same.

**MEMORANDUM DECISION AND ORDER - 13**

designed to exclude nonresponsible contractors from government contracting. *Id*; *Caiola v. Carroll*, 851 F.2d 395, 397 (D.C. Cir. 1988). *See also Dynamic Aviation*, 898 F.Supp. at 11 (pilot sought relief for his *de facto* debarment, claiming he was unable to apply for a pilot card following a one year revocation of the card).

The test for whether debarment is warranted is "the present responsibility of the contractor," which it can meet by "demonstrating that it has taken steps to ensure that the wrongful acts will not recur." *Delta Rocky Mtn. Petroleum, Inc. v. U.S. Dep't of Def.*, 726 F. Supp. 278, 280 (D. Colo. 1989). In *Dynamic Aviation*, a pilot, who was the sole owner of a helicopter and who did business as Dynamic Aviation, sought judicial review of the DOI's refusal to re-test and re-inspect his helicopter following a one-year revocation of his pilot and aviation cards. While the facts of that case are distinguishable from the present case, *Dynamic Aviation* and the other authorities referenced above lead to the conclusion that following a revocation, a pilot can request re-testing and re-inspection, and that the carding agency may consider new information.

Furthermore, nothing in the Department of the Interior Department Manual, 351 DM 3, indicates that reconsideration cannot occur at some point following a decision to revoke a pilot card. Revocation is defined as the cancellation of an existing pilot authorization. (Dkt. 1 at 30, 31.) Nowhere does the manual define revocation as "permanent." Although the procedure manual contemplates pilot reconsideration requests be made within 30 calendar days of receipt of a decision from the carding authority, the same manual indicates also that a "PRB may be convened in accordance with established procedures to assist in the collection and examination of evidence, and make

**MEMORANDUM DECISION AND ORDER  - 14**

recommendations on pilot status *at any stage of the process at the discretion* of the NBC-AMD Associate Director or designated representative." (Dkt. 1 at 34, emphasis added.)

DOI Operations Procedures Memorandum (OPM) – 24 indicates that a PRB may be convened to examine information relevant to "reinstatement" of a pilot carded to provide aviation services to the DOI. (Dkt. 20-8 at 5, Dkt. 1 at 12.) And, the DOI's Airplane Pilot Evaluation Application solicits information concerning any denial, suspension, or revocation of an OAS or USFS pilot qualifications card, explaining that the applicant should "report all OAS and/or USFS card denials, suspensions and/or revocations within the past 5 years." Thus, the application form itself expressly contemplates that a previously carded pilot can ask for review of the circumstances that resulted in the card revocation.

Here, Palmer claims he submitted a pilot evaluation application for the 2023 season on June 26, 2023. Walker Craig, Chief Technical Services for the DOI, Office of Aviation Services, simply returned the request on June 29, 2023, solely on the basis of the 2017 revocation decision. Federal Defendants offer no facts or analysis indicating why Palmer's request for evaluation is time barred or why the denial of the request evades judicial review under either the APA or the Mandamus Act.

It appears, therefore, that Palmer has appropriately brought his claim concerning Defendants' failure to adjudicate his 2023 pilot evaluation request pursuant to the APA and the Mandamus Act. *See, e.g., Wang v. Chertoff*, 676 F. Supp. 2d 1086, 1098 (D. Idaho 2009) (Court issued order under the Mandamus Act and the APA to compel the

government to adjudicate resident alien's application for adjustment of status.).[14] The Court finds Defendants did not carry their burden on summary judgment with respect to Palmer's challenge to the Defendants' 2023 action.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

Defendants' Motion for Summary Judgment (Dkt. 20) is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that all defendants are dismissed except DEBRA ANN HAALAND, in her official capacity as Secretary of Interior.

The Court will conduct a telephonic status conference with the parties on December 4, 2024, at 11:00 a.m. A separate notice of hearing is forthcoming.

Dated: **November 22, 2024**

Candy W. Dale
United States Magistrate Judge

---

[14] The Court notes, however, that neither party elaborated upon whether Palmer has a proven right to relief under either the Mandamus Act or the APA. As discussed above, a plaintiff must show that the agency had a nondiscretionary duty to act and the agency unreasonably delayed in acting on that duty to invoke jurisdiction under the APA. *Gelfer v. Chertoff*, 2007 WL 902382 at *1 (N.D.Cal., March 22, 2007) (citing *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63–65 (2004)). Similarly, the Court can compel a federal official to perform a duty under the Mandamus Act only if the official's duty is nondiscretionary, ministerial, and so plainly described as to be free from doubt. *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir.1997).

**MEMORANDUM DECISION AND ORDER - 16**