# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| EARL PALMER,<br><br>    Plaintiff,<br><br>    vs.<br><br>DOUGLAS BURGUM, in his official capacity as Secretary of Interior,<br><br>    Defendant. | Case No.: 1:23-cv-00466-REP<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**PLAINTIFF EARL PALMER'S MOTION FOR SUMMARY JUDGMENT (Dkt. 48)**<br><br>**GOVERNMENT'S CROSS-MOTION FOR SUMMARY JUDGMENT (Dkt. 51)** |

Pending before the Court are the following motions: (i) Plaintiff Earl Palmer's Motion for Summary Judgment (Dkt. 48); and (ii) Defendant Government's Cross-Motion for Summary Judgment (Dkt. 51).  Having reviewed the record and the parties' submissions, the Court finds that the facts and legal arguments are adequately presented and that oral argument would not significantly aid the decisional process.  *See* Dist. of Idaho Loc. Civ. R. 7.1(d)(1)(B).  Because Defendant denied Plaintiff's 2025 pilot card application, it did not fail to act within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1).  Therefore, Plaintiff's Motion for Summary Judgment is denied and Defendant's Cross-Motion for Summary Judgment is granted.  The Court explains these rulings below.

## I. BACKGROUND

### A.    Factual Background

Plaintiff Earl Palmer ("Palmer") is a former Department of the Interior ("DOI") pilot whose authorization to serve as a DOI pilot was revoked following a Pilot Review Board ("PRB") investigation into multiple aviation incidents, including events in 2012 and 2016.  *See*

**MEMORANDUM DECISION AND ORDER - 1**

11/22/24 MDO at 2 (Dkt. 23). On July 17, 2017, the PRB unanimously recommended that Palmer's pilot authorization be permanently revoked and that he be disqualified from future service as a DOI pilot. *See id*. at 3. On August 17, 2017, the Office of Aviation Services ("OAS") adopted the PRB's recommendation. *See id*. at 4. Palmer did not seek reconsideration within the time provided, and the revocation became final. *See id*. at 4-5.

In approximately 2020-2021, Bighorn Airways hired Palmer as a pilot. AR 35. Bighorn Airways is an aviation company headquartered in Wyoming. *Id*. It has a smokejumper flight contract with DOI and must annually request that DOI approve the pilots that work under that contract. *See* AR 72-198. On June 26, 2023, Bighorn Airways sent a letter to DOI requesting that Palmer be "evaluated for reinstatement of his DOI pilot privileges and Interagency Smokejumper Pilot Card." AR 35-36. On June 29, 2023, DOI informed Bighorn Airways and Palmer that, in light of OAS's August 17, 2017 decision permanently revoking his DOI pilot privileges and disqualifying him from future service (as well as his failure to seek reconsideration), it was returning the pilot evaluation request for the 2023 season "without action" and that "future requests will not be considered." AR 54, 211.

**B.    This Action, the 2025 Application, and Palmer's Supplemental Complaint**

Palmer initiated this action on October 18, 2023. It challenges DOI's decision in 2017 to permanently revoke his pilot privileges, and asserts that DOI unlawfully refused to act on Bighorn Airways' 2023 request. *See generally* Compl. (Dkt. 1). The Complaint sought (i) a declaration that Palmer is eligible to apply for pilot carding and reinstatement; (ii) an order compelling DOI to timely consider his application for carding and/or reinstatement; (iii) a declaration that DOI is not authorized by rule or statute to "permanently revoke" the privileges of a carded pilot without affording the pilot an opportunity to seek reinstatement; and (iv) an order enjoining DOI from interfering with his attempts to seek reinstatement. *See id*.

MEMORANDUM DECISION AND ORDER - 2

DOI moved for summary judgment on all claims. *See* DOI's MSJ (Dkt. 20). In a November 22, 2024 Memorandum Decision and Order, U.S. Magistrate Judge Candy Dale granted the motion in part and denied it in part. *See generally* 11/22/24 MDO (Dkt. 23). The Court held that Palmer's challenge to the 2017 revocation decision was time-barred and otherwise foreclosed, but allowed his claim relating to DOI's refusal to process the 2023 request to proceed (*i.e.*, his pilot privileges were not "permanently revoked"). *See id.* at 12-16.

According to Palmer, DOI thereafter asked him to file an updated application for a pilot card for OAS to review. *See* Palmer Decl. at ¶ 14 (Dkt. 48-3). So, on January 17, 2025, Bighorn Airways submitted an "Interagency Airplane Pilot Evaluation Application" for Palmer (the "2025 Application"). AR 23 (e-mail from Bighorn Airways); AR 15-22 (2025 Application signed by a Bighorn Airways representative and Palmer). The 2025 Application indicated that Palmer previously had an "OAS or USFS pilot qualifications card denied, suspended, or revoked." AR 15-16. It provided information on three separate events in 2004, 2012, and 2016 that resulted in actions against Palmer's flying privileges. *Id.*

On March 4, 2025, Jacob Mitchem, National Fixed Wing Specialist for DOI, issued a written decision denying the 2025 Application. AR 32. DOI's denial stated:

> I have reviewed your most recent Smokejumper Pilot application. When considering your application, I of course had to review the recommendation of the Pilot Review Board (PRB) dated August 17, 2017 and the decision of the OAS Director for a permanent revocation of your pilot card. In light of that past history and concerns about future liability, your Smokejumper Pilot Evaluation is Disapproved.
>
> The findings of the PRB and your decision not to appeal those findings when made, as well as your own acknowledgments and statements, demonstrate your hazardous attitude of anti-authority and invulnerability. Also, the back-channel approach you have taken to obtain a pilot card over the last four years demonstrates a continued anti-authority attitude including a lack of candor from the initial accident through the most recent application.

**MEMORANDUM DECISION AND ORDER - 3**

> There is a clear trend of poor aeronautical decision making and, in particular, mission oriented tunnel vision that has proven ingrained, and needlessly puts lives at risk.  A pilot needs to know when a mission puts lives at risk and take alternative action.  In addition, you have shown a disregard for written policy made during your time in a leadership role as National Fixed Wing Specialist that cannot be overlooked or ignored.
>
> I was not involved in the original accident investigations or decisions made by the PRB or any other investigation.  The decision to disapprove your application was based on a review of the 481-page PRB report, accident investigation records, your application, and the potential liability that could be incurred by the DOI if your Smokejumper Pilot privileges are reinstated.  The risk of liability is simply too high to even allow for a Pilot Evaluation as that would require you flying with passengers.  We need to put their safety first.
>
> For these reasons, I am disapproving your application.

*Id*.  For its part, Bighorn Airways did not seek reconsideration, appeal, or otherwise exhaust its administrative remedies with respect to DOI's denial of the 2025 Application.[1]

But on April 1, 2025, Palmer filed a Supplemental Complaint in this case, incorporating the 2025 Application into his claims against DOI.  *See generally* Supp. Compl. (Dkt. 43).  Therein, Palmer alleges that DOI has continued to refuse to properly consider his applications and seeks declaratory and injunctive relief compelling DOI to evaluate them in accordance with its governing procedures.  *See id*. at ¶¶ 19-20 ("[Mr. Mitchem's] letter demonstrates that the defendant continues to refuse to consider the application, in accordance with its own policies, rules and regulations, as the law obligates it to do.  The refusal to consider the application in 2023, as well as the updated application in 2025, demonstrates that the defendant will not comply with the appropriate rules, standards, procedures and regulations unless and until the court enters an order mandating that it do so.").

---

[1] Upon Judge Dale's retirement, this action was reassigned to the undersigned on March 13, 2025.

**MEMORANDUM DECISION AND ORDER - 4**

**C.      The Parties' Cross-Motions for Summary Judgment**

Following Palmer's Supplemental Complaint, the parties filed a Joint Motion to Modify

Briefing Schedule that allowed DOI to prepare and file the administrative record, followed by a

briefing schedule for the parties' anticipated cross-motions for summary judgment.  *See* Jnt. Mot.

to Mod. Briefing Sched. (Dkt. 44).  The parties have now filed cross-motions for summary

judgment, and the Court addresses them here.

Within his Motion for Summary Judgment, Palmer contends that DOI has a clear,

nondiscretionary duty to evaluate pilot card applications, and that its refusal – or failure to do so

in accordance with its own procedures – constitutes agency action unlawfully withheld or

unreasonably delayed under the Administrative Procedure Act ("APA") and mandamus

principles.  *See generally* Palmer's Mem. ISO MSJ (Dkt. 48-1).  Palmer is not asking the Court

to compel DOI's approval of his application for a pilot card; he instead asks that the Court order

DOI to review his application for a pilot card and issue a decision in accordance with its policies

that govern the agency and its standard pilot card application evaluation process.  *See id*.

DOI responds that Palmer's case is jurisdictionally defective and, in any event, fails on

the merits.  *See generally* DOI's Mem. ISO MSJ (Dkt. 51-1).  It contends that Palmer's claims

constitute an impermissible collateral attack on the 2017 revocation; that no legally required

agency action has been withheld; and that the 2025 Application was in fact already adjudicated

and denied, leaving nothing left to compel under the APA.  *See id*.

## II.  <u>LEGAL STANDARDS</u>

**A.      Administrative Procedure Act**

When a plaintiff seeks relief under the APA and Mandamus Act, courts usually analyze

both claims under only the APA.  *See Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022).  Because

Palmer seeks the same relief under both the APA and Mandamus Act, the Court analyzes his

**MEMORANDUM DECISION AND ORDER - 5**

claims under the APA.  Palmer and DOI agree on the APA's application to their cross-motions for summary judgment.  *Compare* Palmer's Mem. ISO MSJ at 4 (Dkt. 48-1), *with* DOI's Mem. ISO MSJ at 10-11 (Dkt. 51-1).

The APA allows for limited judicial review of final agency actions.  *See* 5 U.S.C. §§ 701-706.  Under the relevant section of the APA, reviewing courts "shall compel agency action unlawfully withheld or unreasonably delayed."  *Id*. at § 706(1).  "A court may compel agency action under the APA when the agency (i) has a clear, certain, and mandatory duty, and (ii) has unreasonably delayed in performing such duty."  *Vaz*, 33 F.4th at 1136.  Thus, a court can compel agency action "only if there is 'a specific, unequivocal command' placed on the agency to take a 'discrete agency action,' and the agency has failed to take that action."  *Vietnam Veterans of Am. v. Cent. Intel. Agency*, 811 F.3d 1068, 1075 (9th Cir. 2016) (quoting *Norton v. S. Utah Wilderness All. (SUWA)*, 542 U.S. 55, 63-64 (2004)).

The main purpose of the limited scope of judicial review under the APA is "to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve."  *SUWA*, 542 U.S. at 66.  Although a reviewing court's inquiry "must be thorough, the standard of review is highly deferential; the agency's decision is entitled to a presumption of regularity, and [the court] may not substitute [its] judgment for that of the agency."  *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014) (quotation marks omitted).

Section 706(1) of the APA does not give courts license to compel agency action whenever an agency is withholding or delaying some action.  Rather, the court's ability to "'compel agency action' is carefully circumscribed to situations where an agency has ignored a specific legislative command."  *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923,

**MEMORANDUM DECISION AND ORDER - 6**

932 (9th Cir. 2010). The plaintiff must "assert[ ] that an agency failed to take *a discrete agency action* that it is *required to take*." *SUWA*, 542 U.S. at 64 (emphasis in original). Although the reviewing court has the power to compel agency action under § 706(1), "the manner of its action is left to the agency's discretion." *Id*. at 65. In other words, "a court can compel the agency to act, but has no power to specify what the action must be." *Id*.

### B.    Cross-Motions for Summary Judgment in APA Cases

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the merits under the APA, however, the Court does not ask whether there is a genuine dispute of any material fact. In such situations, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985). In an APA-review case, "summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Id*. at 770; *Alliance for Wild Rockies v. U.S. Forest Serv.*, 774 F. Supp. 3d 1253, 1268 (D. Idaho 2025).

With cross-motions for summary judgment, courts "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-1 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standards.").

### III.  DISCUSSION

At summary judgment, the parties sharply dispute both the nature of the agency action at issue and the scope of this Court's authority under the APA. Palmer characterizes this case as a

**MEMORANDUM DECISION AND ORDER - 7**

narrow failure-to-act claim, asserting that DOI has a clear, non-discretionary duty to evaluate pilot card applications, like his, in accordance with department manual and policy – specifically OAS-5400-205 (OAS Aircraft, Equipment and Pilot Inspection Standards). *See* Palmer's Mem. ISO MSJ at 2-4, 8-10 (Dkt. 48-1). Palmer contends that those procedures require that qualified applicants be evaluated through a defined process. *See id.* Yet in both 2023 and 2025, DOI has refused to carry out that required evaluation. *Id.* In Palmer's view, DOI's "disapprov[al]" of his 2025 Application – based solely on his "past history" – reflects an improper reliance on the 2017 "permanent revocation" that Judge Dale rejected as a basis to categorically deny future applications. *See id.* DOI's continued refusal to evaluate his applications, says Palmer, constitutes an unreasonable delay in violation of the APA, 5 U.S.C. § 706(1). *See id.* at 10-11. Palmer therefore seeks an order compelling DOI to evaluate his applications consistent with its own evaluation protocol, not an order directing that he be approved. *See id.* at 2, 8-9, 11.

DOI frames the case differently. It argues that Palmer's claims are, in substance, an impermissible attempt to relitigate or circumvent the 2017 revocation decision, which this Court has already held to be time-barred. *See* DOI's Mem. ISO MSJ at 1-2, 21-24 (Dkt. 51-1). More fundamentally, DOI contends that the Court lacks subject matter jurisdiction because (i) Palmer lacks standing to enforce DOI's denial of applications submitted by his employer (Bighorn Airways is not a party to the case); (ii) Palmer cannot identify any "discrete" and "legally required" agency action that can be compelled by the Court; and (iii) there is no actual case or controversy to adjudicate because DOI considered the updated 2025 Application and formally denied it. *See id.* at 2, 11-24. According to DOI, in denying the 2025 Application, Palmer's claims here actually represent a disagreement with that decision, not an unreasonable delay or failure to act. *See id.* at 13, 24-25. DOI argues that such a claim must be brought under a different section of the APA – 5 U.S.C. § 706(2) – which is not pleaded in Palmer's

**MEMORANDUM DECISION AND ORDER - 8**

Supplemental Complaint and therefore should not be considered here. *See id*. Finally, DOI

urges the undersigned to revisit Judge Dale's prior conclusion that debarment principles preclude

a permanent revocation. *See id*. at 27-30. DOI argues that those principles do not apply to DOI

pilot authorizations and that the 2017 revocation was a lawful final agency action. *Id.*

**A.     DOI's Denial of the 2025 Application Defeats Palmer's § 706(1) Failure-to-Act Claim**

Palmer's Supplemental Complaint confirms that this lawsuit is pleaded as a failure-to-act

claim. He alleges that DOI "refus[ed] to consider" his application and engaged in a "failure to

act upon the application" in violation of governing procedures, and he seeks an order compelling

DOI to process his application. *See* Supp. Compl. at ¶ 4 (Dkt. 43). These allegations – and the

relief requested – fit squarely within 5 U.S.C. § 706(1), which authorizes courts to "compel

agency action unlawfully withheld or unreasonably delayed." Palmer's summary judgment

briefing reinforces this framing, expressly invoking § 706(1) as the basis for relief. *See* Palmer's

Mem. ISO MSJ at 12 (Dkt. 48-1).

But § 706(1) applies only where an agency has failed to act, not where it has acted and

denied a request. The Supreme Court has drawn a clear distinction between these two

categories, explaining that "[a] 'failure to act' is not the same thing as a 'denial.'" *SUWA*, 542

U.S. at 63 ("The latter is the agency's act of saying no to a request; the former is simply the

omission of an action without formally rejecting a request – for example, the failure to

promulgate a rule or take some decision by a statutory deadline."). Ordinarily, once an agency

has taken action – even if the plaintiff believes that action was procedurally deficient or

substantively incorrect – the claim no longer falls within § 706(1).

That principle resolves this case. The administrative record establishes that DOI did not

fail to act on the 2025 Application. Rather, DOI considered, adjudicated, and expressly

**MEMORANDUM DECISION AND ORDER - 9**

"disapprov[ed]" the 2025 Application in a written decision.  *See* AR 32.  Because DOI issued a decision here, there is no agency action "unlawfully withheld or unreasonably delayed" that this Court may compel under § 706(1).  *See id.*

Palmer attempts to avoid this conclusion by arguing that DOI failed to follow its internal procedures when evaluating the application.  *See* Palmer's Mem. ISO MSJ at 6-11 (Dkt. 48-1); Palmer's Reply ISO MSJ at 1-5, 7-16 (Dkt. 52).  But that argument goes to the adequacy of DOI's decision-making process, not to the absence of a decision.  The Supreme Court has cautioned that courts may not transform a disagreement with an agency's decision into a claim for "failure to act."  *See SUWA*, 542 U.S. at 66; *see also* DOI's Reply ISO MSJ at 3-4 (Dkt. 53) (citing *Hells Canyon Pres. Council*, 593 F.3d at 933 ("HCPC's reliance on § 706(1) is an attempt to end run around an insurmountable problem: HCPC's argument is better phrased as a claim that the Forest Service's boundary determination was 'arbitrary and capricious' [under § 706(2)].")); *Cloverdale Rancheria Indians v. Salazar*, 2011 WL 1883196, at *4-5 (N.D. Cal. 2011) ("Defendants did not fail to act on Plaintiffs' request; they denied it.  To the extent that Plaintiffs seek to challenge Defendants' failure to recognize the 2009 Council, their claim is better understood as contesting Defendants' *denial* of recognition rather than a *failure* to recognize.  The Supreme Court has held that an agency's act of saying no to a request properly is challenged under § 706(2) rather than § 706(1).") (emphasis in original, citing *SUWA*, 542 U.S. at 63); *Noem v. Haaland*, 542 F. Supp. 3d 898, 924 (D. S.D. 2021) ("The NPS did not fail to take action here.  Rather the NPS did take action; it denied the State's permit request.  As the Supreme Court has made clear, there is an important distinction between the failure to act and a denial. The 'extraordinary remedy' afforded under § 706(1) is not available when a federal agency merely denies a request.") (citing *SUWA*, 542 U.S. at 63)).  To the extent Palmer challenges the manner in which DOI evaluated his application – or the reasons given for denying

**MEMORANDUM DECISION AND ORDER - 10**

it —such a claim would arise, if at all, under § 706(2), which governs review of final agency action.[2] *That* claim, however, is not before the Court.

Accordingly, Palmer has not identified any discrete agency action that has been unlawfully withheld or unreasonably delayed.  Because DOI has acted, there is nothing for this Court to compel under § 706(1).

This decision does not conflict with Judge Dale's prior ruling.  Judge Dale held only that DOI lacked authority to impose a permanent revocation and allowed Palmer's claims regarding Bighorn Airways' 2023 request to proceed.  *See* 11/22/24 MDO at 12-16 (Dkt. 23).  She did not hold that Palmer was entitled to mandamus relief or that DOI had violated the APA.  *See id*. at 16, n.14 ("The Court notes, however, that neither party elaborated upon whether Palmer has a proven right to the relief under either the Mandamus Act or the APA.  As discussed above, a plaintiff must show that the agency had a nondiscretionary duty to act and the agency unreasonably delayed in acting on that duty to invoke jurisdiction under the APA.").  In other words, Judge Dale concluded that Palmer's claim could proceed, but took no position on whether it would succeed.  Importantly, at the time of that ruling, the at-issue dispute concerned DOI's refusal to consider Bighorn Airways' 2023 request.  *See* AR 54, 211.  Since then, however, the factual posture has changed: (i) Bighorn Airways submitted the 2025 Application to DOI; and (ii) DOI issued a written decision denying it.  *See* AR 15-23, 32.  Once DOI acted, the case shifted from one involving alleged inaction under § 706(1) to one involving a challenge to final agency action under § 706(2).  This resolves the question that Judge Dale left open.

Because DOI has now acted – that is, acted on the 2025 Application – Palmer's claim for relief under § 706(1) no longer concerns agency inaction but instead challenges the substance of

---

[2] The APA provides that agency action must be upheld unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C.§ 706(2)(A).

**MEMORANDUM DECISION AND ORDER - 11**

DOI's decision.  That type of claim is cognizable under § 706(2), not § 706(1).  Therefore, Palmer's § 706(1) failure-to-act claim fails as a matter of law.[3]  This ruling addresses only Palmer's claims under § 706(1).  The Court does not reach, and expresses no view on, whether DOI's denial of the 2025 Application may be subject to any challenge under § 706(2), particularly in light of the evolving posture of such applications over time.  *See* DOI's Mem. ISO MSJ at 6, 12 (Dkt. 51-1) (noting that Bighorn Airways must annually request that DOI approve the pilots that work under its smokejumper flight contracts with DOI) (citing AR 148).

**B.    The Court Need Not Reconsider Judge Dale's Debarment Analysis**

DOI additionally urges the Court to reconsider Judge Dale's prior determination that debarment principles preclude a permanent or lifetime revocation of a pilot's authorization.  *See generally* DOI's Mem. ISO MSJ at 27-30 (Dkt. 51-1).  According to DOI, the Court's debarment analysis and its decision to strike the word "permanent" from the 2017 decision is incorrect and needs to be corrected because (i) the Court had no power to do that since the APA's statute of limitations had run; (ii) the Court erred in treating Palmer as a contractor; and (iii) Palmer is estopped from challenging the permanency of the 2017 decision.  *See id*.  These arguments, however, seek to revisit an issue already addressed at an earlier stage of this litigation and resolved as part of the Court's prior summary judgment ruling.

The Court need not, and does not, resolve DOI's request to reconsider and set aside that ruling.  As explained above, Palmer's claims fail as a matter of law under § 706(1) because DOI did not fail to act on the operative application, but instead considered and denied it.  *See supra*.  That conclusion is sufficient to dispose of the case as pleaded.  Whether Judge Dale correctly

---

[3]  The Court's resolution of Palmer's § 706(1) claim makes it unnecessary to address the parties' remaining arguments, including those concerning standing, mootness, and whether DOI's manual creates enforceable duties.

**MEMORANDUM DECISION AND ORDER - 12**

applied debarment principles to the 2017 revocation does not alter the dispositive fact that DOI has since issued a written decision on the 2025 Application.  Therefore, the Court declines to revisit the issue and resolves the pending cross-motions for summary judgment on the narrower ground that no agency action has been unlawfully withheld or unreasonably delayed under § 706(1).

## IV.  ORDER

Based on the foregoing, IT IS HEREBY ORDERED THAT:

1.    Plaintiff Earl Palmer's Motion for Summary Judgment (Dkt. 48) is DENIED; and

2.    Defendant Government's Cross-Motion for Summary Judgment (Dkt. 51) is GRANTED.



DATED:  March 30, 2026

_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 13**